The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the prior Opinion and Award, except with the modification of Findings of Fact Numbers 4, 12, and 13, Conclusion of Law Number 1 and Award Number 1 regarding plaintiff's capacity to earn wages since November 6, 1996. In addition the Order filed May 5, 1999 amending the original Opinion and Award is incorporated herein and modified with regard to the amount of credit to which defendants are entitled.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties after the hearing as
 STIPULATIONS
1. Dr. Poehling's deposition is a part of the evidentiary record.
2. A set of stipulated medical records submitted by defendants are received into evidence.
***********
Based upon all of the competent evidence of the record and reasonable inferences drawn therefrom, the Full Commission adopts the findings of fact found by the Deputy Commissioner with the modification of Findings of Fact Numbers 4, 12, and 13 and finds as follows
 FINDINGS OF FACT
1. Plaintiff sustained an admittedly compensable injury to his left knee on January 4, 1995, when he fell from scaffolding. Following the injury, plaintiff underwent a course of treatment for his left knee, including multiple surgeries.
2. By October 17, 1996, plaintiff had reached maximum medical improvement with regard to the left knee injury and retained a 20% permanent partial impairment of the left leg as a result of the admittedly compensable injury. At that time, plaintiff had the capacity to perform medium to heavy work provided that he did not perform repetitive and static squatting, crouching, kneeling on the left knee or lateral climbing.
3. Andrew Russell of American Rehabilitation, Inc. was assigned to assist plaintiff with vocational rehabilitation. On October 11, 1996, Mr. Russell contacted plaintiff's attorney's office to schedule a meeting with plaintiff. The meeting was initially scheduled for October 28, 1996, but was postponed after plaintiff's attorney's office advised Mr. Russell that there was no space in which to conduct the meeting. Therefore, the meeting was delayed until November 6, 1996.
4. In November of 1996, plaintiff arranged to go to work for his father to replace an employee who was moving out of state. Plaintiff advised Mr. Russell that he intended to go to work for his father and did not accept Mr. Russell's efforts to find him suitable employment because he had arranged to take the job with his father. Notwithstanding plaintiff's not accepting the services of Mr. Russell, plaintiff did have the capacity to earn at least $6.25 per hour in positions which have been continuously available in the Greensboro area since November 6, 1996.
5. The employee whom plaintiff was to replace was delayed in leaving the state as a result, plaintiff did not actually begin working for his father until approximately January 18, 1997. Since that time, defendants paid plaintiff temporary partial disability at the rate of $100.18 per week.
6. Plaintiff continued to work for his father through sometime in March of 1997. The work plaintiff performed for his father was suitable to plaintiff's physical capacity, and plaintiff did not stop working for his father on account of his compensable injury but rather, because the work was no longer available.
7. In April of 1997, plaintiff moved to Myrtle Beach, South Carolina. Between the time he stopped working for his father and the time that he moved to Myrtle Beach, plaintiff did not look for other work in the Greensboro area.
8. After plaintiff moved to Myrtle Beach, he lined up a job in a restaurant to cook, clean tables and wash dishes. In this capacity, plaintiff expected to earn $6.25 per hour on a full-time basis.
9. After plaintiff moved to Myrtle Beach, William Bivens of Crawford Company was assigned to assist plaintiff with vocational rehabilitation but plaintiff did not cooperate with Mr. Bivens. Nevertheless, plaintiff did retain the capacity to earn at least $6.25 per hour on a full-time basis from the time that he moved to Myrtle Beach.
10. Before plaintiff began the job that he had found at the restaurant, he fell down some stairs, spraining his right knee. Plaintiff testified at the hearing that his left knee gave way, causing him to fall. However, plaintiff related that he tripped while coming down the stairs when he initially sought treatment at the Columbia Grand Strand Regional Medical Center emergency room on June 11, 1997.
11. Plaintiff returned to Dr. Poehling on three occasions after having sprained his right knee as he continued to experience symptoms involving the knee. In the course of evaluation of plaintiff's ongoing complaints, Dr. Poehling found that plaintiff was actually suffering from villonodular synovitis of the right knee. However, that condition was not attributable to the injury plaintiff had at work on January 4, 1995, or to the fall plaintiff sustained on or about June 11, 1997.
12. By November 6, 1996, plaintiff had the capacity to earn wages of at least $250.00 per week in the Greensboro, North Carolina labor market. This capacity to earn wages did not end when plaintiff moved to Myrtle Beach, South Carolina where plaintiff retained the capacity to earn $250.00 per week. Because plaintiff's decision to move to Myrtle Beach was a personal one and did not reflect any incapacity to earn wages in the Greensboro labor market, plaintiff retained the capacity to earn $250.00 per week even after moving to Myrtle Beach.
13. Defendants have not established that plaintiff is capable of earning $350.26 per week. However, defendants have established that plaintiff is capable of earning $250.00 per week since November 6, 1996.
14. The parties in this case participated in mediation on March 27, 1997, and defendants paid the mediator's fee of $400.00 pursuant to the Commission's order of February 5, 1997.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Inasmuch as plaintiff has had the capacity to earn wages of $250.00 per week since November 6, 1996, plaintiff is entitled to compensation for two-thirds of the difference between the stipulated average weekly wage of $350.26 and plaintiff's capacity to earn wages of $250.00 per week beginning November 6, 1996, and continuing for up to 300 weeks from January 4, 1995. To the extent that defendants have paid plaintiff compensation in excess of $66.84 per week since November 6, 1996, defendants are entitled to a credit to be applied against the compensation awarded herein. Defendants are also entitled to a credit in the amount of $200.00 representing the plaintiff's share of the mediator's fee. N.C.G.S. § 97-30 and § 97-42. See Rule 7(d) of the Rules for Mediated Settlement Conferences of the North Carolina Industrial Commission.
2. Plaintiff did not sustain an injury to his right knee compensable under the Workers' Compensation Act. N.C.G.S. §97-2(6).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay plaintiff compensation at the rate of $66.84 per week beginning November 6, 1996, and continuing up to 300 weeks from January 4, 1995. Any compensation which has accrued shall be paid in a lump sum subject to the attorney's fee hereinafter approved. Defendants shall receive a credit to the extent that they have paid plaintiff compensation in excess of $66.84 per week since November 6, 1996. In addition, defendants shall receive a credit in the amount of $200.00, representing plaintiff's share of the mediator's fee. These credits shall offset the compensation awarded herein.
2. An attorney's fee in the amount of 25% of the award is hereby approved for plaintiff's counsel. Counsel shall receive 25% of any amount which has accrued, if any, and in addition, every fourth check due plaintiff in the future shall be sent directly to plaintiff's counsel as a reasonable attorney's fee.
3. Plaintiff's claim for benefits associated with the condition of his right knee is hereby DENIED.
4. Defendants shall pay the costs, including an expert witness fee, if not already paid, to Dr. Poehling in the amount of $350.00.
S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
DCS: nwg